UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SEAN GIBSON,

     Plaintiff,

v.                                Case No. 8:20-cv-2992-KKM-SPF

CHRISTOPHER NOCCO, JEFFREY
HARRINGTON, CLINT MILLER,
JAMES MALLO, and MICHAEL SHOUP,

     Defendants.

_____/

## ORDER

Plaintiff Sean Gibson resigned from the Pasco County Sheriff's Office and now brings constitutional and Racketeer Influenced and Corrupt Organizations Act (RICO) claims against his former supervisors. His efforts to transform his commonplace employment disputes into RICO and constitutional ones are unsuccessful. Instead, Gibson's amended complaint comprises a shotgun pleading and, even for the identifiable claims, fails to state a claim upon which relief can be granted. As a result, the Court grants Defendants' motion to dismiss (Doc. 19), dismisses Gibson's amended complaint with prejudice, and directs the clerk to enter judgment in Defendants' favor.

## I.    Procedural History

The history of this litigation is both protracted and procedurally painful, yet with little advancement on the merits. On April 16, 2019, Christopher J. Squitieri and two other plaintiffs filed a complaint against fifteen defendants, all of whom were current or former employees of the Pasco County Sheriff's Office ("Squitieri litigation"), alleging a civil RICO and state law claim. *See Squitieri v. Nocco*, 8:19-cv-0906-KKM-AAS. A couple months later, an amended complaint was filed in the case; it named twenty plaintiffs— including Gibson—and forty-five defendants. After receiving leave from the Court (at that time, the case was before the Honorable Charlene Honeywell), the Squitieri litigation plaintiffs filed a second amended complaint on August 7, 2019. Defendants moved to dismiss plaintiffs' second amended complaint less than a week later. During a hearing on defendants' motion to dismiss, Judge Honeywell step-by-step explained the deficiencies remaining in the plaintiffs' pleading and orally granted-in-part defendants' motion to dismiss the second amended complaint and directed plaintiffs to file a third amended complaint that complied with the Federal Rules of Civil Procedure. The Squitieri litigation plaintiffs filed a third amended complaint, which defendants again moved to dismiss.

After entering an order to show cause and considering plaintiffs' response, Judge Honeywell severed the Squitieri litigation claims and ordered plaintiffs to pursue their claims in separate actions against the appropriate defendants by December 16, 2020.

2

Gibson initiated this action by filing a complaint against Defendants Christopher Nocco, Jeffrey Harrington, Clint Miller, James Mallo, and Michael Shoup. (Doc. 1.) Gibson then filed an amended complaint on February 19, 2021, alleging a civil RICO claim (Count I) and various constitutional violations (Count II). (Doc. 15.) Defendants move to dismiss the amended complaint as a shotgun pleading and for failure to state a claim upon which relief could be granted under Federal Rule of Civil Procedure 12(b)(6). (Doc. 19.) Gibson opposes the motion to dismiss (Doc. 23), and the Court stayed discovery pending the resolution of the motion to dismiss (Doc. 24).

## II.    Factual Background

Gibson's amended complaint recounts several events leading up to the end of Gibson's employment with the Sheriff's Office, most of which can be connected to the complaint's claims only by several inferential steps. For example, Gibson left the Pasco County Sherriff's office around 2011 and joined the Tampa Police Department—when he returned to the Sheriff's Office in 2012, Defendant Mallow "was displeased . . . simply because he did not like officers working at Tampa Police Department." (Doc. 15 at ¶¶ 24–25.) It is not apparent what relevance this allegation has to either Gibson's RICO claim or his claims for various constitutional violations.

Between November 2014 and November 2015, six "Internal Affairs Complaints" were filed against Gibson. (Doc. 15 at ¶¶ 27–32.) The first complaint was filed against

Gibson for "defending the legalization of medical marijuana on Facebook" and was accompanied by a "letter of reprimand." (*Id.* at ¶ 27.) The next complaint was filed against him for "'conduct unbecoming' after he made the comment, 'Screw the State Attorney's Office' on Facebook while advocating for body-cams," again accompanied by a reprimand. (*Id.* at ¶ 28.) The third complaint was filed against Gibson for allegedly refusing to amend a report that Defendant Shoup accused Gibson of falsifying, "even though the report shows it was approved by Defendant [Shoup]." (*Id.* at ¶ 29.) Gibson claims the "Complaint was not sustained." (*Id.*) Another complaint was filed against Gibson for turning in a "concealed weapon or firearm license . . . permit late." (*Id.* at ¶ 30.) A fifth complaint was filed against Gibson for extra and off-duty employment, although Gibson claims to have only attended one meeting with the employer "without signing a contract or paperwork." (*Id.* at ¶ 31.) The final complaint filed against Gibson alleged "Careless Disregard" and the first five complaints were combined into one, "accusing him of never following orders." (*Id.* at ¶ 32.)

In his amended complaint, Gibson also describes the "Intelligence Led Policing" program that the Sheriff's Office had implemented. Gibson alleges the ILP program is unconstitutional, "targets those deemed to be 'prolific offenders,'" and instructs law enforcement "to focus [their] efforts on those criminals who [they] have reason to believe are frequent or prolific offenders." (*Id.* at ¶¶ 19, 21.) "The major problem with the ILP

practices," Gibson alleges, is that they rest on the notion that "[s]peed is critical to success and bureaucratic processes that delay implementation must be overcome"—even if those "bureaucratic processes" "are the fundamental constitutional considerations of 'probable cause' and the many other constitutional protections that apply to all citizens in a free society." (*Id.* at ¶ 20.) And Defendants were "unhappy" that Gibson kept too busy to do ILP work and "never gave out code enforcement violations, . . . a tool used against [those] targeted by the ILP customs." (*Id.* at ¶ 26.) When Gibson did not "play[] along" and "enforc[e] the unconstitutional dimensions and components of the ILP Program against innocent citizens of Pasco County," Defendants retaliated against him with the above-described "baseless internal departmental investigation intended to ruin [his] career." (*Id.* at ¶¶ 22, 23.)

## III.   Analysis

### a.  Shotgun Pleading

Defendants first argue that the amended complaint should be dismissed as an impermissible shotgun pleading. (Doc. 19 at 4.) The Court concurs.

#### i.  Legal Standard

A shotgun pleading is any pleading which "fail[s] to one degree or another . . . to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th

Cir. 2015). Although shotgun pleadings can take many forms, the Eleventh Circuit has identified four "rough types" or categories of shotgun complaints. *Id.* at 1321–23. First, the most common type contains "multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Id.* at 1321 (footnote omitted). The second type of shotgun pleading is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Id.* at 1321–22 (footnote omitted). "The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief." *Id.* at 1322–23 (footnote omitted). "Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.* (footnote omitted). "The unifying characteristic of all types of shotgun pleadings is that they fail . . . to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* (footnote omitted). And they violate the Federal Rules of Civil Procedure, most notably Rules 8 and 10.

### ii.  Analysis

Defendants argue that Gibson's amended complaint commits the venial sin of being "replete with 'conclusory, vague, and immaterial facts obviously not connected to any

particular cause of action' and otherwise fails to advise defendants of the claims asserted against them." (Doc. 18 at 5 (citation omitted).) The Court generally agrees, but also finds that the amended complaint makes the mortal mistake of not separating each claim for relief into a different count. Gibson received notice of these pleading deficiencies once the amended complaint[1] was filed in the Squitieri litigation in 2019. Indeed, at a hearing on the defendants' motion to dismiss the second amended complaint in the Squitieri litigation, Gibson's attorney, the same counsel as in the Squitieri litigation and in this case and the signatory of Gibson's amended complaint here, admitted that the second amended complaint was "poorly drafted." *Squitieri v. Nocco*, 8:19-cv-0906-KKM-AAS, (Doc. 171 at 7). In the same hearing, Judge Honeywell opined that "the complaint [was] so poorly drafted" that she could not "even get to the merits of it" and that the amended complaint was "absolutely" a "shotgun pleading"; "there [was] no mistake about it." (*Id.* at 6, 8.) Despite these judicial warnings and multiple motions to dismiss in the Squitieri litigation that highlighted the complaints' shortfalls, the deficiencies remained in Gibson's three Squitieri litigation complaints and two complaints in this case. Rather than correct the deficiencies, Gibson persisted in submitting poorly drafted pleadings by copying and pasting numerous paragraphs from previous iterations of the Squitieri litigation complaints

---

[1] Gibson joined as a plaintiff in the amended complaint filed in the Squitieri litigation.

7

and his first complaint in this case into his amended complaint that is now before the Court.

To begin, Gibson's amended complaint is plagued with immaterial and seemingly irrelevant allegations that do not obviously connect to any particular claim for relief. *See Barmapov v. Amuial*, 986 F.3d 1321, 1325 (11th Cir. 2021) (explaining that a complaint was undoubtably a shotgun pleading where it was "rife with immaterial factual allegations"). Count I of the amended complaint (the RICO claim) opens with Gibson "re-alleg[ing] and re-incorporat[ing]" all of the preceding paragraphs in the complaint (paragraphs 1–35)—including the sections on jurisdiction and venue, the parties, and the general allegations. (Doc. 15 at ¶ 36.) He makes the same mistake in Count II of his complaint (various constitutional violations), "re-alleg[ing] and re-incorporat[ing]" paragraphs 1–35 of the amended complaint—leaving Defendants and the Court to puzzle over which allegations connect to the RICO claim or the constitutional violations. (*Id.* at ¶ 42.)

Attempting to construe which allegations connect to each claim proves an especially difficult task here where Gibson includes many allegations that do not obviously relate to any claim in the amended complaint. For example, Gibson alleges—without explanation of its relevance or consequence—that Defendant Mallo was displeased when Gibson returned to the Sheriff's Office. (*Id.* at ¶ 25.) Gibson also claims that the Defendants were

"unhappy" because Gibson did not actively participate in the ILP program—but he fails to explain how their unhappiness is relevant to any claim. Is claiming their displeasure simply another method of re-alleging that the defendants "retaliated against the Plaintiff with baseless internal departmental investigations" for his failure to "cooperat[e]" in enforcing the ILP program? (Doc. 15 at ¶ 23.) The relevance of several of the Internal Affairs Complaints—such as the complaint filed for turning in evidence late, meeting with another employer, or for "Careless Disregard"—to Gibson's claims is difficult to trace. Although Gibson elsewhere in the complaint calls all of the Internal Affairs Complaints "fraudulent" and "baseless," he does not give the Court any reason to doubt their validity. *See Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) (noting that conclusory allegations are not entitled "to the presumption of truth"). Without any explanation of these complaints' relevance from Gibson, the Court is at a loss for how they relate to either his RICO or constitutional claims.

In short, many allegations in Gibson's amended complaint appear to be immaterial or irrelevant to his claims, leaving Defendants to speculate about the grounds on which Gibson's claims rest. *See Weiland*, 792 F.3d at 1323 ("The unifying characteristic of all types of shotgun pleadings is that they fail . . . to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests."). And Gibson's opposition to Defendants' motion to dismiss (Doc. 23) fails to provide the much-needed

explanation and clarity, leaving the Court and Defendants unsure of which allegations are intended to support which claims for relief. *See Weiland*, 792 F.3d at 1325.

Further, Count II improperly lumps together a variety of constitutional violations. (*See* Doc. 15 at ¶¶ 42–47.) Gibson alleges that "Defendants, in their official capacities, punished [Gibson] for exercising his First Amendment rights," (*id.* at ¶ 44); that Defendant Nocco took "a valuable property right protected by the Constitution" away from Gibson (his job), (*id.* at ¶ 45); that Defendants "denied [Gibson] equal protection of the law," (*id.* at ¶ 46); and that Defendants' conduct "constitutes an unlawful and unauthorized taking of [Gibson's] job via forced resignation, his 'private property,' without just compensation, without due process of law, and without a public purpose, in violation of the [Fifth] Amendment," (*id.*). In the six paragraphs that comprise Count II, Gibson appears to allege violations of his First, Fifth, and Fourteenth Amendment rights. (*See id.* at ¶¶ 42–47.) Of course, his earlier allegation in the amended complaint listed "the Fourth, Fifth, and Fourteenth Amendment[s]." (*See id.* at ¶ 2 (without mentioning the First Amendment).) "[W]here a plaintiff asserts multiple claims for relief, a properly drafted pleading 'will present each claim for relief in a separate count.'" *Marlborough Holdings Grp., Ltd. v. Azimut-Benetti, Spa, Platinum Yacht Collection No. Two, Inc.*, 505 F. App'x 899, 907 (11th Cir. 2013) (quoting *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996)). The failure to separate each claim for

relief into a different count, as required by Rule 10(b), is a hallmark of a shotgun pleading and makes it "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." *Anderson*, 77 F.3d at 366; *see Barmapov*, 986 F.3d at 1325. Accordingly, the Court dismisses Gibson's amended complaint as an impermissible shotgun pleading.

### b. Failure to State a Claim under Rule 12(b)(6)

In the alternative, Defendants argue that Gibson's claims—the civil RICO claim and constitutional claims—fail to state a claim upon which relief may be granted. (Doc. 19 at 7–23.) Again, the Court agrees.

### i. Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Iqbal*, 556 U.S. at 678 (citation omitted). A claim is plausible on its face when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Id.*

When considering the motion, the court accepts all factual allegations of the complaint as true and construes them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008) (citation omitted). Courts should limit their "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (citations omitted).

### ii. RICO Claim

#### 1. Legal Standard

The Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968, provides a private right of action for treble damages to "[a]ny person injured in his business or property by reason of a violation" of the Act's criminal prohibitions. § 1964(c); *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 641 (2008). To state a prima facie civil RICO claim under § 1964(c), a plaintiff must establish "three essential elements: first, that the defendant[s] committed a pattern of RICO predicate acts under 18 U.S.C. § 1962; second, that the plaintiff suffered injury to business or property; and, finally, that the defendant[s'] racketeering activity proximately caused the injury." *Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702, 705 (11th Cir. 2014) (citations and punctuation omitted). Failing to adequately plead any one of these elements warrants dismissal of the plaintiff's complaint for failure to state a claim upon which relief may be granted. *See Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1211 (11th Cir. 2020). Because Gibson failed to

12

plead factual allegations to establish the requisite predicate acts of racketeering activity or a pattern of racketeering activity, the Court dismisses Gibson's amended complaint for failing to state a claim.

### 2. Analysis

#### a. Gibson fails to plead any predicate acts under 18 U.S.C. § 1961(1).

An act of racketeering activity, commonly known as a "predicate act," is statutorily defined and includes a long list of state and federal crimes. *See* 18 U.S.C. § 1961(1). Gibson alleges that Defendants have "engaged in a pattern and practice, through the Pasco [County] Sheriff's Office, of engaging in 'racketeering activity'" through the following predicate acts[2]: (1) extortion as defined by state law under § 1961(1)(A); (2) mail fraud under 18 U.S.C. § 1341; (3) wire fraud under 18 U.S.C. § 1343; (4) theft or embezzlement from an employee benefit plan in violation of § 664 and section 836.05, Florida Statutes;[3]

---

[2] In the first paragraph of his general allegations, Gibson alleges that Defendants engaged in racketeering activity through (1) retaliating against a witness, victim, or informant under 18 U.S.C. § 1513(e) and (2) tampering with a witness, victim, or informant under § 1512(b). (Doc. 15 at ¶ 13.) But Gibson fails to mention these alleged predicate acts anywhere else in his complaint, including his RICO count. In the absence of any additional factual allegations to support these alleged predicate acts, Gibson fails to properly plead them.

[3] Gibson also alleges that Defendants violated Florida's RICO statute. But in pleading his state law claim, Gibson only cites to section 895.02(8)(b), Florida Statutes—the Florida *criminal* RICO statute. Not only is this state law claim insufficiently pleaded, section 895.05(6) limits the relief available for a private person to injunctive relief. *See Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d 1290, 1302 n.18 (11th Cir. 1998) (explaining that section 895.05(6) of the Florida criminal RICO statute "allows a private plaintiff to bring a civil suit for equitable relief only"). Because Gibson is no longer an employee of the Pasco County Sheriff's Office and has alleged no threat of future injury, he lacks standing to seek injunctive relief under Florida law. *See, e.g.*, *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 364 (2011) (noting that plaintiffs who were former employees no longer employed by the defendant "lack[ed] standing to seek injunctive or declaratory relief against its employment practices"); *Drayton v. W. Auto Supply Co.*, No. 01-

and (5) tampering with, harassed, or retaliated against a witness, victim, or informant under Florida statutes §§ 837, 914.22, and 914.23 (Doc. 15 at ¶¶ 13, 37–41.) "A plaintiff must put forward enough facts with respect to each predicate act to make it independently indictable as a crime." *Cisneros*, 972 F.3d at 1215.

In addition to the basic pleading standards, Gibson must meet the heightened pleading requirements of Rule 9(b) when alleging predicate acts of fraud. *See Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1316 (11th Cir. 2007) ("Civil RICO claims, which are essentially a certain breed of fraud claims, must be pled with an increased level of specificity." (citation omitted)); *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1380 (11th Cir. 1997) (explaining that "the Plaintiffs would be required to replead their RICO claims with the specificity required in Federal Rule of Civil Procedure 9(b)"). "To satisfy the Rule 9(b) standard, RICO complaints must allege: (1) the precise statements, documents, or misrepresentations made; (2) the time and place of and person responsible for the statement; (3) the content and manner in which the statements misled

10415, 2002 WL 32508918, at *4 (11th Cir. Mar. 11, 2002) ("[T]his Court has held that former employees who submit no fact that they will be discriminated against in the future lack standing to seek an injunction." (alteration in original) (citing *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1007 (11th Cir. 1997))). Although Gibson argues in his response to Defendants' motion to dismiss that "[t]he injunctive relief requested under [Florida law] is the correction of the false Internal Affairs reports that continue to damage [Gibson] by damaging his reputation and ability to find a job in law enforcement" and that he does not seek an injunction based on "employment practices" (Doc. 23 at 4), this argument fails. Gibson does not mention injunctive relief anywhere in his amended complaint (*see* Doc. 15), much less allege facts sufficient to plead the elements entitling him to such relief. Further, neither his amended complaint (*see* Doc. 15) nor his response (*see* Doc. 23) contain allegations explaining how an injunction could provide the relief he seeks (correcting an internal affairs report) or explaining how this relief is connected to any racketeering activity, as required under Florida's criminal RICO statute.

the Plaintiffs; and (4) what the Defendants gained by the alleged fraud." *Ambrosia Coal & Constr. Co.*, 482 F.3d at 1316–17.

Gibson fails to meet this heightened standard and consequently fails to sufficiently plead any of these predicate acts for the reasons discussed below.

### i. Gibson fails to plead predicate acts under 18 U.S.C. § 1961(1)(a).

In his amended complaint, Gibson alleges that Defendants engaged in the racketeering activity of extortion under 18 U.S.C. § 1961(1)(A) by "threatening that if [Gibson] refused to resign immediately he would lose his vacation and sick leave pay." (Doc. 15 at ¶¶ 33, 40.) Defendants respond that Gibson's amended complaint "is devoid of any allegations which would meet the required elements of an extortion claim." (Doc. 19 at 15.) The Court agrees.

Section 1961(1)(A) defines "racketeering" activity as "any act or threat involving . . . extortion . . . which is chargeable under State law and punishable by imprisonment for more than one year . . . ." § 1961(1)(A). Section 836.05, Florida Statutes, in turn, criminalizes extortion, stating that whoever "maliciously threatens to accuse another of any crime or offense, or by such communication maliciously threatens an injury to the person, property or reputation of another, or maliciously threatens to expose another to disgrace, or to expose any secret affecting another, or to impute any deformity or lack of chastity to another, with intent thereby to extort money or any pecuniary advantage whatsoever, or

with intent to compel the person so threatened, or any other person, to do any act or refrain from doing any act against his or her will, shall be guilty of a" second-degree felony. Florida's "extortion statute prohibits only those utterances or communications which constitute malicious threats to do injury to another's person, reputation, or property." *Carricarte v. State*, 384 So. 2d 1261, 1263 (Fla. 1980). And "the threats must be made with the intent to extort money or the intent to compel another to act or refrain from acting against his will." *Id.*

Gibson's statement that Defendants engaged in extortion by "extort[ing Gibson] to resign," (Doc. 15 at ¶ 40), is conclusory. Gibson does not allege any facts that would make it plausible that Defendants threatened him, including what "utterances or communications" constituted the alleged threat or how the threat was malicious. Although Gibson frames the Internal Affairs Complaints as being brought against him when he was told to resign, no facts—other than a conclusory allegation that the complaints were fraudulent—are alleged that would transform this direction into a "malicious" threat. Without any supporting factual allegations, Gibson's amended complaint falls short of putting "forward enough facts . . . to make [the extortion claim] independently indictable as a crime," *Cisneros*, 972 F.3d at 1215, meaning it is insufficient to state a predicate act, *see Ashcroft*, 556 U.S. at 678.

16

### ii. Gibson fails to plead predicate acts under 18 U.S.C. §§ 1341 and 1343.

Gibson alleges that the defendants violated 18 U.S.C. §§ 1341 and 1343 by committing mail and wire fraud when they created "false Internal Affairs Complaints . . . and pursued [them] as a scheme, under false and fraudulent pretenses, to harass [Gibson] to force him to resign or create grounds for a dismissal" and then transmitted those complaints "either by mail or electronic means." (Doc. 15 at ¶¶ 37-38.) Defendants argue that Gibson's claims "fall[] woefully short of establishing mail or wire fraud." (Doc. 19 at 15.) Defendants are correct.

To establish liability under the federal mail and wire fraud statutes, a plaintiff must prove: "(1) that defendants knowingly devised or participated in a scheme to defraud plaintiffs, (2) that they did so willingly with an intent to defraud, and (3) that the defendants used the U.S. mails or the interstate wires for the purpose of executing the scheme." *Langford v. Rite Aid of Alabama, Inc.*, 231 F.3d 1308, 1312 (11th Cir. 2000) (citation omitted). Although "defraud" is not defined in the statute,[4] falsehood is at least required. *See Neder v. United States*, 527 U.S. 1, 25 (1999) (interpreting the mail and wire fraud statutes to require that the falsehood in the scheme to defraud be material). Even cases that appear to require less than a blatant falsehood still require that the "scheme [be]

---

[4] 18 U.S.C. § 1346 technically defines "scheme or artifice to defraud," but only insofar as it notes that this phrase "includes a scheme or artifice to deprive another of the intangible right of honest services." Further, the range of "intangible right[s] of honest services" that this definition reaches has been cabined to only bribery and kickback schemes. *See Skilling v. United States*, 561 U.S. 358, 411 (2010).

17

reasonably calculated to deceive persons of ordinary prudence and comprehension." *Blachly v. United States*, 380 F.2d 665, 671 (5th Cir. 1967). Here, Gibson's complaint fails to sufficiently allege any falsehood or that the scheme was "calculated to deceive" him. Lacking either of these, Gibson fails to allege any scheme or intent to defraud.

First, Gibson has failed to provide any facts that show how the Internal Affairs Complaints—the purportedly fraudulent documents transmitted by mail or wire—were false. As the defendants argue, it even appears that Gibson, except for one complaint, "concedes to the conduct allegedly underlying each [Internal Affairs] investigation." (Doc. 19 at 14.) Gibson notes two complaints filed against him for comments made on Facebook, a complaint filed against him for being late in turning in evidence, a complaint filed against him for meeting with another employer, and a complaint for "[c]areless [d]isregard." (Doc 15 at ¶¶ 27, 28, 30, 31, and 32.) But in none of these paragraphs does he dispute the bases of the complaints, except for claiming that in the meeting with the external employer he did not "sign[] a contract or paperwork." (Doc. 15 at ¶ 31.) And by noting this dispute as to how much happened at the meeting with the other employer, Gibson suggests through his silence that he does not dispute the bases for the other complaints. If Gibson wanted to instead argue that some of these complaints were not false but defrauded him by deceiving him, the argument would lack coherence—absent an allegation that he has

18

difficulty remembering his past, the Court will not assume that the Defendants are able to deceive Gibson about Gibson's own conduct.

Finally, the complaint notes one Internal Affairs Complaint filed against Gibson based upon an accusation against Gibson from Defendant Shoup. (Doc. 15 at ¶ 29.) If plain language were to be stretched to its limit to favor Gibson, this might allege that the Internal Affairs Complaint was based on false information. Fair enough. But Gibson has still not alleged how this fraudulent complaint—barely alleged to be false—was used in the United States mails or wires. The only statement about the mail or wires were that the documents were "transmitted either by mail or electronic means." Gibson fails to allege any specifics as to what wires or mail was used. Was this complaint mailed from one office to another? Was the complaint transmitted over a wire, uploaded to the internet, or sent by fax? The allegation that the document was "transmitted either by mail or electronic means" is a mere conclusory legal claim that is not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 681. And of course, there are no allegations of what "money or property" the Defendants obtained from Gibson through this alleged fraudulent complaint.

Gibson's allegations of mail and wire fraud are conclusory regarding any falsehood or fraudulent scheme, appear at times to concede the accuracy of the Internal Affairs Complaints, and only state a legal conclusion that the United States mail or wires were

involved. These bare allegations are insufficient to allege fraud as a predicate act for RICO liability, especially under Rule 9(b)'s heightened standard for pleading fraud.

### iii.  Gibson fails to plead predicate acts under 18 U.S.C. § 664.

In his amended complaint, Gibson alleges that Defendants "conspired to violate 18 U.S.C.  § 664. – Theft or embezzlement from [an] employee benefit plan." (Doc. 15 at ¶ 39.) Section 664 provides that: "[a]ny person who embezzles, steals, or unlawfully and willfully abstracts or converts to his own use or to the use of another, any of the moneys, funds, securities, premiums, credits, property, or other assets of any employee welfare benefit plan or employee pension benefit plan, or of any fund connected therewith, shall be fined under this title, or imprisoned not more than five years, or both." The statute further clarifies that only embezzlement from benefit plans subject to title I of the Employee Retirement Income Security Act of 1974 (ERISA) count for § 664.

Put simply, Gibson's amended complaint does not contain any allegations to support this predicate act. (*See generally* Doc. 15.) Although Gibson argues that Defendants forced him to resign or "he would lose his vacation and sick leave pay," this single conclusory allegation falls woefully short of sufficiently stating a claim under Section 664. (*Id.* at ¶ 42.)

Even if Gibson had alleged facts that show the defendants sought to embezzle Gibson's sick leave and vacation pay, the defendants correctly point out that Gibson has

not alleged that his sick leave and vacation pay are part of benefit plans subject to ERISA. (Doc. 19 at 16.) The Defendants instead claim that the Sheriff's Office participates in the Florida Retirement System, which is not subject to ERISA. (*Id.*) According to the Defendants, the Florida Retirement System is a government plan and "government plan[s]," which are "plan[s] established . . . by the government of any State or political subdivision thereof," 29 U.S.C. § 1002(32), are expressly excepted from ERISA, § 1003(b)(1).

Gibson provides only a single conclusory allegation regarding his embezzlement claim. More than that, he fails to identify how his sick pay and vacation time were part of a benefit plan subject to ERISA or provide any response to the Defendants' claims that the Sheriff's Office's benefit plan is a government plan. Gibson unsuccessfully alleges a predicate act for RICO through § 664.

### b. Gibson fails to sufficiently allege that Defendants committed a pattern of racketeering activity.

Essential to any RICO claim is the basic requirement of establishing a pattern of racketeering activity. *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1264 (11th Cir. 2004). "To successfully allege a pattern of racketeering activity, [a] plaintiff[] must charge that: (1) the defendants committed two or more predicate acts within a ten-year time span; (2) the predicate acts were related to one another; and (3) the predicate acts demonstrated criminal conduct of a *continuing* nature." *Id.* at 1264. To prove "a 'pattern of racketeering

activity' it is not sufficient to simply establish two isolated predicate acts." *Id.* "RICO targets *ongoing* criminal activity, rather than sporadic, isolated criminal acts . . . ." *Id.*

Even if Gibson had adequately pleaded any predicate acts (he hasn't), he fails to establish that his predicate acts constitute a pattern of racketeering activity.[5] Indeed, the Court cannot identify two alleged instances of any criminal activity—much less the pattern required by a RICO claim—in Gibson's amended complaint. Accordingly, Gibson cannot establish the "pattern of racketeering activity" element for his civil RICO claim. *See Jackson*, 372 F.3d at 1264.

### c. Gibson fails to sufficiently plead violations of sections 837, 914.22, and 914.23 of Florida Statutes.

Gibson alleges that the Defendants "engaged in threats or extortion in violation of . . . Fla. Stat. § 837[ and] violated Fla. Stat. § 914.22 and 914.23, relating to tampering with or harassing a witness, victim, or informant, and retaliation against a witness, victim, or informant." (Doc. 15 at ¶ 41.) To start, it is unclear whether Gibson is alleging violations of these statutes only by way of the federal RICO statute which defines racketeering activity (and thus predicate acts) as those "chargeable under State Law" or if Gibson means to

---

[5] A generous reading of the response to the motion to dismiss would be that Gibson alleges that the *implementation* of the ILP program itself constituted the predicate acts making up the pattern. (Doc. 23 at 9–12.) But Gibson does not make that allegation in his amended complaint and fails to explain, in both the operative pleading and response in opposition to the motion to dismiss, how the ILP program constitutes racketeering activity under 18 U.S.C. § 1962. None of the predicate acts pleaded in Gibson's amended complaint relate to the ILP program (or at least the connection is not explained); they all relate to Gibson's allegedly falsified Internal Affairs Complaints and extorted resignation. (*See generally* Doc. 15.) And considering that Gibson does not clearly point to any individual predicate acts—whether related to the ILP program or not—he cannot show a pattern of racketeering activity.

allege these as independent avenues for relief. The Court doubts whether Gibson, as a private party, is able to bring suit for these violations absent a RICO statute or other civil enforcement mechanism not alleged here. But under either method, Gibson fails to sufficiently allege a violation of any of these statutes.

### i. Gibson fails to sufficiently plead violations of any perjury provision in chapter 837 of the Florida Statutes.

Gibson alleges the "conduct described in the General Allegations . . . shows that the Defendants . . . violated Fla. Stat. § 837." (Doc. 15 at ¶ 41.) There are six sections within chapter 837 of the Florida Statutes which proscribe different forms of perjury, but Gibson does not specify which section he alleges that the Defendants violated. Sections 837.012, 837.02, and 837.05 require that the false statements be made under oath. Sections 837.05 and 837.055 require that false information be given to a law enforcement officer and relate to an alleged commission of a crime, a felony investigation, or a missing person investigation. Gibson has not alleged that the Defendants made any statements under oath nor that any false information given relates to the commission of a crime or missing person investigation. These five sections are immediately unavailable to Gibson.

The one remaining provision, 837.06, proscribes "mak[ing] a false statement in writing with the intent to mislead a public servant in the performance of his or her official duty." Gibson does not identify the false statement or the public servant allegedly misled. If the false statements are the Internal Affairs Complaints, he has not sufficiently alleged

their falsity. *See supra* III(b)(ii)(2)(a)(ii). If the false statement is the accusation of Gibson "of having false information on a report," (Doc. 15 at ¶ 29), that allegation fails to allege the accusation was false or "in writing," as the statute requires. Straining to determine both the section allegedly violated and the acts allegedly constituting the violation, the Court sees nothing. Gibson fails to plead perjury.

> **ii. Gibson fails to successfully plead violations of either section 914.22 or section 914.23 of the Florida Statutes.**

Section 914.22 of the Florida Statutes proscribes tampering with a witness or victim and section 914.23 proscribes retaliating against a witness or victim. Because Gibson fails to allege any official investigation or proceeding that he attended or testified in or would testify in, he fails to sufficiently plead either section 914.22 or 914.23.

Section 914.22 of the Florida Statutes proscribes intimidation, threats, or bribery to induce someone to withhold testimony from an official investigation or proceeding and harassment that prevents or dissuades someone from attending or testifying in an official investigation or proceeding. Gibson elsewhere alleges that the Defendants forced him to resign or face losing his face vacation and sick leave pay. Assuming this sufficiently alleges a threat or a bribe, Gibson fails to explain how this threat or bribe was done by the Defendants with the intent to induce Gibson to withhold testimony from an official investigation or proceeding. *See* § 914.22(1)(a), Florida Statutes. Moreover, it is not clear what official investigation or proceeding Gibson would withhold testimony from—

24

Gibson's complaint does not allege any investigation or proceeding that was impending at the time of his resignation and in which he would testify.

Gibson also alleges the Defendants violated 914.23 by retaliating against a witness, victim, or informant. This section proscribes "caus[ing] bodily injury to another person or damag[ing] the tangible property of another person, or threaten[ing] to do so" as retaliation for a person's attendance or testimony in an official proceeding. Section 914.21(4), in turn, defines "official proceeding" as a proceeding before a judge, court, grand jury, the legislature, a federal agency authorized by law, or the Commission on Ethics. Gibson does not allege that he attended or gave testimony in any proceeding before a judge, court, grand jury, legislature, federal agency, or the Commission on Ethics. His statements on Facebook or any information he gave in response to the Internal Affairs Complaints fall outside these enumerated proceedings.

### 3.  RICO Claim Conclusion

Because Gibson fails to adequately allege the existence of any predicate acts or a pattern of racketeering activity and because the failure to plead any one of these elements is fatal to a RICO claim, his civil RICO claim fails.

### iii.  Count II: Constitutional Violations

A generous reading of the amended complaint reveals allegations of violations of Gibson's constitutional rights under the First, Fifth, and Fourteenth Amendments.[6] (Doc. 15 at ¶¶ 44–47.) But because Gibson does not sufficiently state a claim upon which relief can be granted, his constitutional claims fail. Specifically, as Defendants argue, "Gibson's Amended Complaint fails to allege how his constitutional rights were infringed/implicated by Defendants' alleged conduct." (Doc. 19 at 22.)

As for the First Amendment claim, Gibson alleges that "Defendants, in their official capacities, punished [Gibson] for exercising his First Amendment rights." (Doc. 15 at ¶ 44.) Although Gibson's amended complaint includes several legal conclusions—e.g., that Defendants "abridged and restrained [Gibson's] rights to free speech" and the violation of Gibson's First Amendment rights "constitutes an impermissible 'chilling effect' on constitutionally protected speech and expression," (*id.* at ¶ 46)—it does not include factual

---

[6] At the beginning of his amended complaint, Gibson explains that this action arises under the "Fourth, Fifth, and Fourteenth Amendment[s] to the United States Constitution" and in Count II, he mentions the First, Fifth and Fourteenth Amendments. (Doc. 15 at ¶¶ 2, 44, 46.) The Fourth Amendment bears no relationship to any factual allegation in the amended complaint, so the Court assumes it was an error. As for the Fifth and Fourteenth Amendment claims, Gibson provides only conclusory statements and wholly fails to support his conclusions with factual allegations. In the penultimate paragraph of Count II of his amended complaint, Gibson states that Defendants, in their official capacities, "denie[d Gibson] equal protection of the law in that the Defendants' conduct was arbitrary, oppressive and capricious and unreasonably required [Gibson] to submit to controls not imposed on other similarly situated Sheriff's Deputies" and "constitute[d] an unlawful and unauthorized taking of [Gibson's] job via forced resignation, his 'private property,' without just compensation, without due process of law, and without a public purpose, in violation of the [Fifth] Amendment." (Doc. 15 at ¶ 46.) Gibson never includes any other allegations relating to these constitutional claims. And "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft*, 556 U.S. at 679.

allegations to support his claim. For example, the amended complaint does not identify the speech that the Defendants allegedly "abridged and restrained." His Facebook comments about medical marijuana and the State Attorney's Office? His Facebook comments advocating for body-cams? The amended complaint leaves the Court and Defendants guessing. In his response to Defendants' motion to dismiss, he argues that "he exercised his right to free speech by speaking up against the illegal misconduct of Defendants, and by refusing to participate in said misconduct, and using his time to complete other tasks not related to ILP." (Doc. 23 at 14.) The response further alleges that he "was directly punished for his expressions of support for medical marijuana and body worn cameras on his personal social media accounts." (*Id.*) But Gibson does not actually describe any time he spoke up against the purported misconduct of the Defendants—merely that he avoided participating in the ILP program. Nor does he establish that he was speaking as a private citizen on a matter of public concern instead of as a government employee or explain how this unidentified speech was connected to Defendants' allegedly retaliatory action. *See Lamar v. Clayton Cnty. Sch. Dist.*, 605 F. App'x 804, 806–07 (11th Cir. 2015). And, importantly, a response in opposition to a motion to dismiss does not cure deficiencies in the pleading itself. Gibson must make those allegations in the operative complaint.

As an overall fatal flaw, the amended complaint lacks any theory of municipal liability. Gibson brings Count II against Defendants in their official capacities only. (*See*

Doc. 15 at ¶¶ 43, 44, 46, 47.) "A suit against a municipal officer in his official capacity is effectively a suit against the government entity that the officer represents." *Lopez v. Gibson*, 770 F. App'x 982, 991 (11th Cir. 2019). Thus, a suit against Defendant Nocco is effectively an action against the governmental entity that Defendant Nocco represents—here, Pasco County. *Id.*; *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1115 (11th Cir. 2005). And municipal liability exists only when a "'policy or custom' of the municipality inflicts the injury." *Cook ex rel. Estate of Tessier*, 402 F.3d at 1116; *see Lopez*, 770 F. App'x at 991. An official policy or custom can manifest in several ways. For example, municipal liability may be premised on a single illegal act by a municipal officer—but only "when the challenged act may fairly be said to represent official policy, such as when that municipal officer possesses final policymaking authority over the relevant subject matter." *Lopez*, 770 F. App'x at 991 (quotation omitted).

Although Gibson argues that retaliating against employees for exercising their First Amendment rights is "the policy and custom of the Sheriff's Office," (Doc. 23 at 14), Gibson does not demonstrate how retaliation represents official policy or identify a municipal officer with final policymaking authority who implemented this policy against him. And Gibson's statement that the "policy and custom" of the Sheriff's Office was to violate its employees' First Amendment rights is a generalized conclusion that alone cannot establish liability for the Sheriff's Office. Further, this argument is confined to Gibson's

28

response; the amended complaint is devoid of any such allegations. Accordingly, Gibson's constitutional claims fail.

## IV. Conclusion

In total between the Squitieri litigation and here, Gibson has filed five complaints. And after quintuple chances, his amended complaint remains deficient and warrants dismissal as a shotgun pleading and for failure to state a claim upon which relief may be granted. Gibson received more than fair notice of the defects in his complaint, yet rebuffed all warnings to remedy them. Accordingly, the Court dismisses this case with prejudice. *See Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1296 (11th Cir. 2018); *Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1358 (11th Cir. 2018); *Cornelius v. Bank of Am., NA*, 585 F. App'x 996, 1000 (11th Cir. 2014).

Accordingly, it is **ORDERED**:

(1) Defendants' motion to dismiss Gibson's amended complaint is **GRANTED**. (Doc. 19).

(2) The Court **DISMISSES WITH PREJUDICE** Counts I and II of Gibson's amended complaint (Doc. 15) and **DISMISSES THIS ACTION**.

(3) The Clerk is directed to enter judgment in favor of Defendants, terminate any pending motions and deadlines, and to close the case.

**ORDERED** in Tampa, Florida, on September 3, 2021.

Kathryn Kimball Mizelle
United States District Judge